# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| MARIO SALINAS<br>3151 Queens Chapel Road, Apt. 301<br>Mount Rainier, MD 20712 | *<br><br>* | |
| and | * | Civil Action No._____ |
| WILLIAM ASCENCIO<br>8101 20th Ave.<br>Hyattsville, MD 20783 | *<br><br>* | |
| Plaintiffs, on behalf of<br>themselves and others<br>similarly situated, | *<br><br>* | |
| v. | * | |
| COMMERCIAL INTERIORS, INC.<br>7464 New Ridge Rd., Ste. 5<br>Hanover, MD 21076 | *<br><br>* | |
| **Serve On:**<br>Bruce Tabler<br>7464 New Ridge Rd., Ste. 5<br>Hanover, MD 21076 | *<br><br>*<br><br>* | |
| and | * | |
| J.I. GENERAL CONTRACTORS, INC.<br>4614 8th St. N.W.<br>Washington, D.C. 20011 | *<br><br>* | |
| **Serve on:**<br>Juan Flores Ramirez<br>4614 8th St. N.W.<br>Washington, D.C. 20011 | *<br>*<br><br>* | |
| and | * | |

| | |
|---|---|
| JUAN FLORES RAMIREZ, personally<br>4614 8th St. N.W.<br>Washington, D.C. 20011 | * <br><br>* |
| and | * |
| ISAIAS FLORES RAMIREZ, personally<br>4614 8th St. N.W.<br>Washington, D.C. 20011, | *<br><br>* |
| | * |
| Defendants. | |

## CLASS ACTION AND COLLECTIVE ACTION COMPLAINT

### Introduction

1. Plaintiffs, former employees of Defendants, individually and on behalf of all other similarly situated present and past employees of Defendants, known and unknown, bring this civil action for damages stemming from Defendants' willful failure to pay Plaintiffs their wages, including overtime wages, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, the Maryland Wage and Hour Law ("MWHL"), MD. CODE ANN., LAB. & EMPL. §§ 3-401 *et seq.*, and the Maryland Wage Payment and Collection Law ("MWPCL"), MD. CODE ANN., LAB. & EMPL. §§ 3-501 *et seq.*

2. Plaintiffs bring this action individually, as a collective action under the FLSA, 29 U.S.C. §§ 206, 207 and 216(b), and as a Class Action under Fed. R. Civ. P. 23(b)(3), on behalf of all other similarly-situated current and former employees of Defendants.

### Jurisdiction and Venue

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 29 U.S.C. § 216(b) ("FLSA"), and 28 U.S.C. § 1367 (supplemental jurisdiction).

4.      This Court has supplemental jurisdiction over the state law claims because they are so related to Plaintiffs' federal FLSA claims that they form part of the same case or controversy under Article III, Section 2 of the U.S. Constitution.

5.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)-(c) because Defendant Commercial Interiors, Inc. is incorporated in Anne Arundel County.

### Parties

6.      Plaintiff Mario Salinas is a Maryland resident.  He was employed by Defendants from about 2004 until about September 2011.

7.      Plaintiff William Ascencio is a Maryland resident.  He was employed by Defendants from about August 2005 until about November 2011.

8.      Each Plaintiff was employed by Defendants as a construction worker to install drywall, perform metal framing and ceiling work, and complete other construction work at various worksites in Maryland, Washington, D.C. and Virginia.

9.      As required by the Fair Labor Standards Act at 29 U.S.C. § 216(b), each Plaintiff has given his written consent to become a party to this action.  True and correct copies of Plaintiffs' FLSA consent forms are attached hereto as Exhibit A.

10.     Defendant Commercial Interiors, Inc. ("Commercial Interiors") is a Maryland corporation with its principal place of business in Hanover, Maryland.  At all times relevant to this action, Defendant Commercial Interiors has been an enterprise engaged in interstate commerce or in the production of goods for commerce within the meaning of the FLSA, and has been Plaintiffs' employer within the meaning of the FLSA, 29 U.S.C. § 203(g), MD. CODE ANN., LAB. & EMPL., § 3-101(c), the MWHL, *id.* at § 3-401(b), and the MWPCL, *id.* at § 3-501(b).

11. Defendant Commercial Interiors earns at least $500,000 in annual gross volume of sales made or business done.

12. Defendant Commercial Interiors is in the business of providing general contracting and interior finishing services, including metal framing, insulation, drywall, acoustical ceilings, and other carpentry work.

13. Defendant J.I. General Contractors, Inc. ("J.I. General Contractors") is a Washington, D.C. corporation formed in 2001, with its principal place of business in Washington, D.C.

14. At all times relevant to this action, Defendant J.I. General Contractors has been an enterprise engaged in interstate commerce or in the production of goods for commerce within the meaning of the FLSA, and has been Plaintiffs' employer within the meaning of the FLSA, 29 U.S.C. § 203(g), MD. CODE ANN., LAB. & EMPL., § 3-101(c), the MWHL, *id.* at § 3-401(b), and the MWPCL, *id.* at § 3-501(b).

15. Defendant J.I. General Contractors earns at least $500,000 in annual gross volume of sales made or business done.

16. Defendant Juan Flores Ramirez ("Juan Flores") is an owner, agent or principal of Defendant J.I. General Contractors. At all times relevant to this action, Defendant Juan Flores exercised control over J.I. General Contractors and was involved in the day-to-day operations of the company. Defendant Juan Flores was engaged in interstate commerce or in the production of goods for commerce within the meaning of the FLSA, and was Plaintiffs' employer within the meaning of FLSA, 29 U.S.C. § 203(g), MD. CODE ANN., LAB. & EMPL., § 3-101(c), the MWHL, *id.* at § 3-401(b), and the MWPCL, *id.* at § 3-501(b).

4

17. Defendant Isaias Flores Ramirez ("Isaias Flores") is an owner, agent or principal of Defendant J.I. General Contractors. At all times relevant to this action, Defendant Isaias Flores exercised control over J.I. General Contractors and was involved in the day-to-day operations of the company. Defendant Isaias Flores was engaged in interstate commerce or in the production of goods for commerce within the meaning of the FLSA, and was Plaintiffs' employer within the meaning of FLSA, 29 U.S.C. § 203(g), MD. CODE ANN., LAB. & EMPL., § 3-101(c), the MWHL, *id.* at § 3-401(b), and the MWPCL, *id.* at § 3-501(b).

18. Defendants J.I. General Contractors, Juan Flores and Isaias Flores are in the business of providing workers to perform general contracting and interior finishing services for other businesses. Defendants J.I. General Contractors, Juan Flores and Isaias Flores predominately provided those workers to Defendant Commercial Interiors.

19. Other similarly situated individuals, who worked for Defendants, were employed by one or more of the Defendants within the meaning FLSA, 29 U.S.C. § 203(g), MD. CODE ANN., LAB. & EMPL., § 3-101(c), the MWHL, *id.* at § 3-401(b), and the MWPCL, *id.* at § 3-501(b).

20. At all times pertinent to this action Defendants were the joint employers of Plaintiffs and other similarly situated individuals, within the meaning of 29 C.F.R. § 791.2.

## Statement of Facts

21. Defendants J.I. General Contractors, Juan Flores and Isaias Flores work for and with Defendant Commercial Interior to employ workers to perform drywall, framing, ceiling and other construction work at various worksites in Maryland, Washington, D.C. and Virginia.

22. At all times relevant to this Complaint, Defendants, as employers and/or joint employers, engaged, hired and suffered or permitted Plaintiffs and similarly-situated employees to

5

perform drywall, framing, ceiling and other construction work in various locations in Maryland, Washington D.C., and Virginia. Defendants continue to engage, hire, and suffer or permit similarly-situated employees to perform this same work.

23. Defendants had the power to hire and fire Plaintiffs and similarly-situated employees.

24. Defendants supervised and controlled Plaintiffs' and similarly-situated employees' work schedules.

25. Defendants required Plaintiffs and similarly-situated employees to meet Defendants Juan and Isaias Flores at a 7-11 convenience store in Langley Park, Maryland at approximately 5:30 a.m. every work day for a meeting. During that meeting, which regularly lasted approximately 45 minutes to one hour, Plaintiffs and similarly-situated employees were given necessary instructions on their work, including the location of the work site, crew assignments, and direction on the kind of work they would be performing. Plaintiffs and similarly-situated employees were also required to load their own tools and tools belonging to Defendants into cars or vans to be taken to the work sites, including jack saws, electrical cords, and stilts. Plaintiffs and similarly-situated employees were not permitted to travel to the work sites until this work meeting was completed.

26. The daily morning meeting was part of Plaintiffs' and similarly-situated employees' principal activities and constituted compensable work, but Plaintiffs and similarly-situated employees were not compensated for this time.

27. At the conclusion of the morning meeting, Plaintiffs and similarly-situated employees were required to travel between 30 minutes and two and a half hours to the work site.

28. At the end of their work shifts, Plaintiffs and similarly-situated employees were required to collect tools and materials at the work site and either store them in a large tool receptacle

(the "gang box") or load them into vehicles. These tasks took Plaintiffs and similarly-situated employees approximately an additional thirty (30) minutes to complete.

29. The activities described in paragraphs 25 to 28 (daily morning meeting, travel time to the work site, and post-shift work) were part of Plaintiffs' and similarly-situated employees' principal activities and the time spent on those activities constituted compensable work. However, Defendants failed or refused to compensate Plaintiffs and similarly-situated employees for the time spent on such tasks.

30. Plaintiffs and similarly-situated employees often finished the workday at approximately 3:30 p.m. but Defendants frequently instructed Plaintiffs and similarly-situated employees to work past that time, and/or to work on the weekends. Plaintiffs and similarly-situated employees were often not fully compensated for their work past 3:30 p.m. and/or on the weekends.

31. Defendants and their superintendents, foreman, or similar supervisors or managers ("superintendents") instructed Plaintiffs and similarly-situated employees where to work. Plaintiffs and similarly-situated employees worked for Defendants in several worksites, including but not limited to the Arundel Mills Casino in Hanover, Maryland; the Hollywood Casino in Perryville, Maryland; a building at the University of Baltimore in Baltimore, Maryland; apartment buildings in Crystal City, Virginia, and College Park, Maryland; Salisbury University in Salisbury, Maryland; a parking lot in Baltimore, Maryland; an office building in Towson, Maryland; the Hilton Hotel in Baltimore, Maryland; an apartment building in Bethesda, Maryland; and the National Institutes of Health in Bethesda, Maryland.

32. Defendants also determined the rate and method of Plaintiffs' and similarly-situated employees' payment.

33. Defendants agreed to pay Plaintiffs on an hourly basis at a fixed hourly wage.

34. Under the terms and conditions of Plaintiffs' agreement with Defendants, Plaintiffs were to receive payment on a weekly basis.

35. Under the terms and conditions of their agreement with Defendants, Plaintiff Mario Salinas' rate of pay was $15 an hour.

36. Under the terms and conditions of their agreement with Defendants, Plaintiff William Ascencio's rate of pay was $12.50 an hour.

37. Defendants, as employers and/or joint employers, engaged Plaintiffs to regularly work at least eight-hour days at the sites listed in paragraph 31.

38. During their employment, Plaintiffs and similarly-situated employees frequently worked in excess of forty hours a week.

39. Pursuant to FLSA, 29 C.F.R. § 516, and MD. CODE ANN., LAB. & EMPL. § 3-424, Defendants are required to maintain a record of each hour, day, and week worked by any employee.

40. Defendants collectively maintained employment records for each Plaintiff and similarly-situated employee. The exact number of hours worked by Plaintiffs, and those similarly situated, will only be known through discovery.

41. When they arrived at the work sites, Plaintiffs and similarly-situated employees were frequently required to sign in on Defendant Commercial Interiors' sign-in sheets.

42. During the course of their employment with Defendants, Plaintiffs received paychecks from both Defendant Commercial Interiors and Defendant J.I. General Contractors.

43. At some work sites, Plaintiffs and similarly-situated employees were given identification cards identifying them as employees of Defendant Commercial Interiors.

44. Defendants supervised and controlled Plaintiffs' and similarly-situated employees' employment conditions.

45. Plaintiffs and similarly-situated employees performed drywall, metal framing, acoustical ceiling, and other construction work.

46. Plaintiffs worked under the daily supervision of Defendant Commercial Interiors via their superintendents. Upon information and belief, Defendants' superintendents included but are not limited to Gary Jackson, Mark Shepard, "Richard", "Phil", "Joe", "Stephan", "Dennis," and "Osman."

47. Defendant Commercial Interiors' superintendents instructed Plaintiffs and similarly-situated employees on the manner in which their work should be performed, and trained them on how to complete various tasks, including giving Plaintiffs and similarly-situated employees instruction on where and how to hang drywall, frame walls, and complete ceiling work.

48. Defendant Commercial Interiors had, and routinely exercised its power to review and approve Plaintiffs' work. When Defendant Commercial Interiors decided that work was not done correctly or to the satisfaction of Defendant Commercial Interiors' superintendents, its superintendents would communicate their dissatisfaction to Plaintiffs and similarly situated employees and instruct them to correct the work.

49. Defendants J.I. General Contractors, Juan Flores and Isaias Flores also instructed Plaintiffs on the manner in their work should be performed. When work was not done correctly or to the satisfaction of Defendants J.I. General Contractors, Juan Flores and Isaias Flores, they would communicate their dissatisfaction and instructions to correct the work to Plaintiffs and similarly-situated employees.

50. Defendant Commercial Interiors supplied the necessary materials and supplies for the Plaintiffs' and similarly-situated employees' work, including the drywall, metal, nails, and screws.

51. Plaintiffs were told on multiple occasions by Defendants Juan and Isaias Flores that if anyone visiting the worksites asked Plaintiffs and similarly-situated employees about their employer, they were to report that they worked for Defendant Commercial Interiors.

52. Defendants employed Plaintiffs on a continuous basis, and Plaintiffs worked exclusively or predominantly for Defendants.

53. Plaintiffs' framing, drywall, ceiling and other construction work was an integral part of Defendants' overall construction businesses as described in paragraphs 12 and 18.

54. Defendants unlawfully failed or refused to pay Plaintiffs and other similarly-situated employees all wages due for the work they performed for Defendants.

55. Plaintiffs and similarly-situated employees frequently worked for Defendants in excess of 40 hours per week, but were not compensated at the legally-required overtime rate for those hours. On many occasions, Plaintiffs and similarly-situated employees were not compensated at all for overtime hours they worked.

56. On several occasions Plaintiffs demanded payment from Defendants, but Defendants ignored such demands and unlawfully failed or refused to pay Plaintiffs wages due for the work they performed.

57. On several occasions, Plaintiffs complained about not receiving their overtime wages due, and were told that it was the Defendants' policy not to pay overtime.

58. Defendants' unlawful failure or refusal to pay all wages due and owing to Plaintiffs and other similarly-situated employees was willful, deliberate and/or in reckless disregard of the rights

10

of Plaintiffs to be paid fully and timely for work performed, including overtime, and was not the result of a bona fide dispute.

59. Defendants unlawfully failed or refused to compensate Plaintiffs and similarly-situated employees in full and on time for their work as required by the FLSA, 29 U.S.C.A. § 207(a)(1), the MWHL, MD. CODE ANN., LAB. & EMPL., § 3-415(a), and the MWPCL, *id.* at § 3-505(a).

60. Defendants unlawfully failed or refused to set regular pay periods and timely pay wages to the Plaintiffs and other similarly-situated employees as required by the MWPCL, MD. CODE ANN., LAB. & EMPL., § 3-502.

61. Defendants unlawfully failed or refused to pay Plaintiffs and other similarly-situated employees all wages due for work performed before the termination of Plaintiffs' employment, as required by the MWPCL, MD. CODE ANN., LAB. & EMPL., § 3-505.

62. At all times relevant to this action, Defendants unlawfully failed or refused to comply with the posting requirements of MWHL, MD. CODE ANN., LAB. & EMPL., § 3-423 and FLSA, 29 C.F.R. § 516.4.

### Plaintiffs' Collective Action under FLSA

63. This action is maintainable as an "opt-in" collective action pursuant to the FLSA, 29 U.S.C. § 216(b), as to claims for unpaid overtime compensation, liquidated damages, interest and attorneys' fees and costs under the FLSA.

64. Plaintiffs bring these FLSA claims on their own behalf and on behalf of other similarly-situated workers employed by Defendants, as employers or joint employers, who were denied proper overtime compensation for at least the last three years prior to the filing of this Complaint and through the final disposition of this action.

11

65. The class of individuals on behalf of whom Plaintiffs bring this collective action are similarly situated because they have been or are employed in the same or similar positions as Plaintiffs, had or have the same duties as Plaintiffs, were or are subject to the same or similar unlawful payment practices, and have claims based upon the same legal theory.

66. These similarly-situated employees are known only to Defendants, are readily identifiable, and may be located through Defendants' records. They may be readily be notified of this action, and allowed to opt into it pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for unpaid overtime compensation, liquidated damages, interest, and attorneys' fees and costs under the FLSA.

## Plaintiffs' Class Action Allegations

67. Plaintiffs bring this class action pursuant to Federal Rule of Civil Procedure 23(b)(3), as to claims for unpaid wages, including overtime compensation, under the MWHL, the MWPCL, and in quantum meruit.

68. Plaintiffs bring this class action on behalf of themselves and a class of all past and present employees of Defendants during the relevant statutory period.

69. The class is so numerous that joinder of all such persons individually is impractical. Upon information and belief, the class exceeds forty (40) present and former employees of Defendants.

70. Plaintiffs and the class have all been similarly affected by Defendants' failures to fully and timely compensate their employees.

71. Plaintiffs and the class they represent may be reluctant to raise individual claims due to fear of retaliation.

72. There are questions of law or fact common to the class that predominate over any

questions affecting only individual members, which include, but are not limited to, the following:

    i.        Whether Defendants "employ" or "employed" the Plaintiff Class under Md. Code Ann., Lab. & Empl. § 3-101(c);

    ii.        Whether Defendants unlawfully failed or refused to compensate the Plaintiff Class in full and on time for their work as required by the MWHL, MD. CODE ANN., LAB. & EMPL., § 3-415(a) and the MWPCL, *id*. at § 3-505(a);

    iii.        Whether Defendants unlawfully failed or refused to compensate members of the Plaintiff Class at the rate of 1.5 times their regular hourly rate for all overtime worked as required by MWHL, MD. CODE ANN., LAB. & EMPL., § 3-415(a);

    iv.        Whether Defendants unlawfully failed or refused to fully compensate the Plaintiff Class for time Defendants required them to attend morning meetings, travel time and post-shift work as described in paragraphs 25 through 29;

    v.        Whether Defendants unlawfully failed or refused to set regular pay periods and timely pay wages to the Plaintiff Class as required by the MWPCL, MD. CODE ANN., LAB. & EMPL., § 3-502;

    vi.        Whether Defendants unlawfully failed or refused to pay the Plaintiff Class all wages due for work performed before the termination of Plaintiffs' employment, as required by the MWPCL, MD. CODE ANN., LAB. & EMPL., § 3-505;

    vii.        Whether Defendants' unlawful failures or refusals to fully compensate the Plaintiff Class was the result of a bona fide dispute pursuant to MWPCL, MD. CODE ANN., LAB. & EMPL., § 3-507.2; and

    viii.        Whether Defendants inequitably retained the regular and overtime wages due and

owing to the Plaintiff Class and are therefore liable to the Plaintiff Class in quantum meruit.

73. Plaintiffs' claims are typical of the claims of the above described class because: a) Plaintiffs are members of the class; b) the interests of Plaintiffs are co-extensive with the interests of the other members of the class; c) Plaintiffs' claims arise out of the same unlawful practices, policies and/or course of conduct that form the basis of the claims of the class; d) Plaintiffs' claims are based on the same legal and remedial theories as those of the class; e) there is a lack of adverse interests between Plaintiffs and the other members of the class; and f) common questions exist.

74. Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel experienced in employment and class action litigation.

75. Plaintiffs will fairly and adequately protect the interests of the class.

76. The common questions of law and fact regarding Defendants' illegal payment practices and Defendants' related violations of Maryland's wage laws predominate over any individual differences in class members' claims.

77. A class action is superior to other available methods for the fair and efficient adjudication of the class claims under Maryland's wage laws and, pursuant to Fed. R. Civ. P. 23(b)(3), this case should proceed as a class action with respect to the unpaid wages and damages owed to Plaintiffs and the putative class members.

78. If individual actions were required to be brought by each member of the class injured or affected, the result would be a multiplicity of actions, creating a serious hardship to members of the class, the Court and the Defendants. Accordingly, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit and distribution of the common fund to which the class is entitled.

79. Because members of the class were subject to the same unlawful payment policies and procedures, class members have little interest in individually controlling the prosecution of separate actions and, in most if not all cases, would be unlikely to obtain counsel to adjudicate their individual claims.

80. To date, on information and belief, separate litigation has not commenced against these Defendants for the unlawful payment practices at issue here.

81. Because many of the actions and events giving rise to this action took place in this judicial district and the parties live in this judicial district, it is desirable to concentrate the litigation of the claims in this forum.

82. The case does not present individualized or exceedingly complex factual or legal issues that would render management of the suit as a class action difficult.  Rather, Plaintiffs and the class they seek to represent were all subject to the same unlawful practices that give rise to the instant complaint, and Defendants' practices and procedures present the central and overriding issues in the case.

83. The similarly-situated employees may be identified from Defendants' records and may be notified of the pendency of this Class action in the manner the Court directs.

## COUNT I

### FAIR LABOR STANDARDS ACT
**(Individual and Collective Action for Denial of Overtime Compensation under Federal Law)**

84. Plaintiffs repeat and incorporate by reference the allegations set forth above.

85. Defendants actions violate the FLSA, 29 U.S.C. §§ 206(a)(1) and 207(a)(1).

86. Defendants are liable to Plaintiffs and all other similarly-situated employees, under 29 U.S.C. § 216(b) of the FLSA, for their unpaid wages including any overtime compensation, plus an

additional equal amount as liquidated damages, reasonable attorneys' fees and costs, and any other relief deemed appropriate by the Court.

## COUNT II

### MARYLAND WAGE AND HOUR LAW
### (Individual and Class Action for Denial of Wages Under Maryland Law)

87. Plaintiffs repeat and incorporate by reference the allegations set forth above.

88. Defendants unlawfully failed or refused to pay Plaintiffs' wages in violation of MD. CODE ANN., LAB. & EMPL. §§ 3-413(b), 3-415(a) and 3-420.

89. Defendants are liable to Plaintiffs pursuant to §§ 3-427(a) and (d) of the MWHL for their unpaid overtime owed, plus interest, reasonable counsel fees and costs, and any other relief deemed appropriate by the Court.

## COUNT III

### MARYLAND WAGE PAYMENT AND COLLECTION ACT
### (Individual and Class Action for Failure to Pay All Wages Timely and Regularly)

90. Plaintiffs repeat and incorporate by reference the allegations set forth above.

91. Defendants unlawfully failed or refused to pay Plaintiffs all wages due, including overtime, on their regular paydays in violation of MD. CODE ANN., LAB. & EMPL. § 3-502.

92. Defendants unlawfully failed or refused to pay Plaintiffs all wages due for work that they performed before the termination of their employment, in violation of MD. CODE ANN., LAB. & EMPL. § 3-505.

93. Defendants' unlawful failure or refusal to pay all required wages in a timely and regular manner violated the MWPCL.

94. Defendants' unlawful failure or refusal to pay all required wages was not the result of a bona fide dispute as defined by the MWPCL.

95. Pursuant to MD. CODE ANN., LAB. & EMPL. § 3-507.2, Plaintiffs seek unpaid wages, treble damages, interest, reasonable counsel fees and costs, and any other relief deemed appropriate by the Court.

## COUNT IV

### QUANTUM MERUIT
### (Individual and Class Action)

96. Plaintiffs repeat and incorporate by reference the allegations set forth above.

97. At all times relevant to this complaint, Plaintiffs and similarly-situated workers were employees of Defendants.

98. Defendants had a contractual and equitable obligation to compensate Plaintiffs and similarly-situated employees with legally required regular time and overtime wages for the regular and overtime hours Plaintiffs and similarly-situated employees worked for Defendants.

99. Plaintiffs and similarly-situated employees conferred benefits upon Defendants by working regular and overtime hours on Defendants' behalf.

100. Defendants had an appreciation or knowledge of the benefits being conferred upon them by Plaintiffs and similarly-situated employees.

101. Despite the foregoing, Defendants retained the overtime wages due and owing to Plaintiffs and similarly-situated employees in circumstances that make it inequitable for Defendants to have received the benefits without paying for their value.

102. Defendants are liable to Plaintiffs and similarly-situated employees in quantum meruit, together with an award of interest and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request that this Court grant them the following relief:

a) Certify this matter as a collective action under the FLSA pursuant to 29 U.S.C. § 216(b);

b) Grant judgment against Defendants, jointly and severally, and in favor of each Plaintiff and similarly-situated worker, in the amount of each Plaintiff's and similarly-situated worker's respective unpaid overtime wages, plus an equal amount in liquidated damages pursuant to 29 U.S.C. § 216(b);

c) Certify this case as a class action pursuant to Fed. R. Civ. P. 23(b)(3);

d) Grant judgment against Defendants, jointly and severally, and in favor of the Plaintiffs and the Plaintiff Class in the amount of each Class Member's unpaid overtime wages pursuant to MWHL, MD. CODE ANN., LAB. & EMPL. §§ 3-427(a) and (d);

e) Grant judgment against Defendants, jointly and severally, and in favor of the Plaintiffs and the Plaintiff Class in the amount of each Class Member's unpaid wages plus treble damages pursuant MWPCL, MD. CODE ANN., LAB. & EMPL. § 3-507.2;

f) Grant judgment against Defendants, jointly and severally, in quantum meruit, and award restitution and/or disgorgement of profits to each Plaintiff and Plaintiff Class Member;

g) Award Plaintiffs and the Plaintiff Class pre- and post-judgment interest on all amounts owed as allowed by law;

h) Award Plaintiffs costs and reasonable attorneys' fees incurred in this action, as provided in 29 U.S.C. § 216(b), MD. CODE ANN., LAB. & EMPL. § 3-507.2, and MD. CODE. ANN., LAB. & EMPL. § 3-427(d); and

i) Grant such other and further relief as the Court may deem just and proper.

Respectfully submitted this _2nd_ day of July, 2012,

___/s/_____
Andrea J. Vaughn (Federal Bar No. 29288)
Sally Dworak-Fisher (Federal Bar No. 27321)
PUBLIC JUSTICE CENTER
One North Charles Street, Suite 200
Baltimore, MD 21201
Tel: (410) 625-9409
Fax: (410) 625-9423
vaughna@publicjustice.org
dworakfishers@publicjustice.org
*Attorneys for Plaintiff*