# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
## (SOUTHERN DIVISION)

| | |
|---|---|
| **Mario Salinas, et al.,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| v. | ) Civil Case No. 8:12-cv-1973-PWG |
| | ) |
| **Commercial Interiors, Inc., et al.,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

## REPORT & RECOMMENDATIONS

This "Report and Recommendations" addresses the "Motion for Attorneys' Fees" and the memorandum in support of the same (ECF Nos. 170, 175) and "Bill of Costs" (ECF No. 171) filed by Plaintiffs.

Pursuant to 28 U.S.C. § 636, and Local Rule 301.5(b), the Honorable Paul W. Grimm referred this matter to me to issue a report and make recommendations. I believe that the issues have been fully briefed, and do not believe that a hearing is necessary. L.R. 105.6. As set forth more fully below, I ultimately recommend that the Court grant the Motion for Attorneys' Fees and award costs.

### I. Procedural Background

This protracted litigation began almost six years ago on July 2, 2012, when Plaintiffs filed a Complaint against Defendant Commercial Interiors, Inc. ("Commercial") and J.I. General Contractors, Inc. ("J.I."), alleging violations of the Fair Labor Standards Act ("FLSA"), the Maryland Wage and Hour Law ("MWHL"), and the Maryland Wage Payment and Collection Law ("MWPCL"). (ECF No. 1). Plaintiffs initially intended to bring the action individually, as

a collective action under the FLSA, and as a Class Action under Fed. R. Civ. P. 23(b)(3). *See id.* Class and collective action certifications were ultimately denied (ECF No. 67), and Plaintiffs filed a Second Amended Complaint on March 31, 2014 with five remaining individuals. (ECF No. 78).

On June 13, 2014, Commercial filed a motion for summary judgment, asserting, in relevant part, that Commercial is not liable as a "joint employer." (ECF No. 86). On July 11, 2014, Plaintiffs filed a cross-motion for partial summary judgment "seeking a determination that Commercial is jointly liable." (ECF No. 87). The Honorable Frederick J. Motz entered an order and memorandum opinion granting Commercial's motion and denying Plaintiffs' motion. (ECF Nos. 93, 94). A three-day bench trial with J.I., the remaining Defendant, resulted in judgment in favor of Plaintiffs. (ECF No. 105). The parties subsequently briefed the first of Plaintiffs' motion for attorneys' fees and bill of costs, (ECF Nos. 110, 111), and the Court granted a partial award of fees and costs on May 6, 2015. (ECF No. 121).

Plaintiffs filed a motion for reconsideration as to Commercial's joint employer status with Judge Motz.[1] (ECF Nos. 95, 122). Plaintiffs filed an appeal in the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") of the order granting Commercial's motion for summary judgment. (ECF No. 124). The Fourth Circuit reversed and remanded on January 26, 2017, finding for Plaintiffs, and established a new six-factor test to determine whether an employer is a joint employer under the FLSA. (ECF No. 125). On remand, Plaintiffs filed a motion for summary judgment against Commercial on the joint employer issue, (ECF No. 133), which was granted by Judge Motz on June 19, 2017. (ECF No. 140). Plaintiffs promptly moved for an award of attorneys' fees and costs as the prevailing party. (ECF No. 143, 144).

---

[1] After a review of the record, it appears that there was no ruling on this motion.

Commercial subsequently moved for reconsideration based on a discovery irregularity, which was granted. (ECF No. 141, 152). Plaintiffs then withdrew their motion for attorneys' fees for Plaintiffs' motion for summary judgment against Commercial. (ECF No. 154).

Plaintiffs filed a motion for reconsideration of the order granting Commercial's motion for reconsideration (ECF No. 152) on August 15, 2017, ECF No. 157, which the parties fully briefed. This case was then reassigned to the Honorable Paul W. Grimm, who granted Plaintiffs' motion for reconsideration on November 13, 2017 following a status conference. (ECF No. 168). Plaintiffs filed the instant motion for attorneys' fees and bill of costs. (ECF No. 170, 171). The matter was referred to me to author a Report and make recommendations. (ECF No. 172).

## II. Attorney's Fees and Costs

### A. Legal Standard

The payment of attorney's fees and costs to employees who prevail on FLSA claims is mandatory, 29 U.S.C. § 216(b),[2] while the amount awarded is discretionary. *See Randolph v. Powercomm Construction, Inc.*, 715 Fed. App'x 227, 230 (4th Cir. 2017); *Burnley v. Short*, 730 F.2d 136, 141 (4th Cir. 1984). To recover attorney's fees and costs, a plaintiff must be a "prevailing party," a threshold question for which the Court accords a "generous formulation." *Hensley v. Eckerhart et al.*, 461 U.S. 424, 433 (1983).[3] A plaintiff is a prevailing party for the purpose of an attorney's fees award if the plaintiff succeeds "on any significant issue in litigation which achieves some of the benefit . . . sought in bringing suit." *Id.* (citation omitted).

---

[2] In an FLSA action, "[t]he court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).

[3] Although *Hensley* explains the standards of "prevailing party" under 42 U.S.C. § 1988, *Hensley* extends the standards to "all cases in which Congress has authorized an award of fees to a 'prevailing party,'" *Hensley*, 461 U.S. at 433 n.7, and its standards are therefore pertinent to an award of fees under the FLSA.

Where a Plaintiff is a prevailing party, a court must then determine what fee is reasonable. *Hensley*, 461 U.S. at 433. To do so, courts engage in a three-step process. First, a court must calculate the lodestar, "the number of reasonable hours expended times a reasonable rate." *Randolph*, 715 Fed. App'x at 230 (citing *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013)). To determine what is reasonable in the lodestar calculation, a court is bound to apply the factors set forth in *Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). *See id.* These twelve factors are the following:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* ("*Johnson* factors").

Second, per *Randolph*, the second step requires a district court to subtract fees for hours spent on unsuccessful claims unrelated to successful ones. 715 Fed. App'x at 230. In that regard, a court must adjust the number of hours to delete duplicative or unrelated hours, and the number of hours must be reasonable and represent the product of "billing judgment." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994). Third, a court should award "some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Randolph*, 715 Fed. App'x at 230 (citing to *McAfee*, 738 F.3d at 88).

An attorney's fees award that is greater than the amount of judgment is not unusual. There is no rule that requires proportionality between the amount of judgment and fee award under civil rights statutes. *See Nelson v. A & H Motors, Inc.*, No. 12-2288, 2013 WL 388991, at *2 (D. Md. Jan. 30, 2013) (citing *City of Riverside v. Rivera*, 477 U.S. 561, 573–81 (1986)).

The FLSA is a civil rights statute. *See id.* at *2, n.3 (citing *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 454 (2008)). The Supreme Court has opined that a rule requiring proportionality would "seriously undermine Congress' purpose" and prevents victims who frequently cannot pay counsel at market rates from effective access to the justice system. *Riverside*, 477 U.S. at 576; *see also id.* at *2. The Fourth Circuit has accordingly recognized that "[a]wards of attorney's fees substantially exceeding damages are not unusual in civil rights litigation." *Nelson*, 2013 WL 388991, at *2 (citing *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 328 n.20 (4th Cir. 2006)). Proportionality, then, is considered "only to the extent that amount is relevant to the *Johnson* factor of amount in controversy and results obtained." *Id.*

This Court's Local Rules state, in relevant part, "a bill of costs shall be filed within fourteen (14) days of the entry of judgment." L.R. 109.1. Further, "a party objecting to any requested costs shall submit a memorandum in opposition to the request within the time permitted by L.R. 105.2." *Id.*

    B.    <u>Plaintiffs' Motion for Attorney's Fees</u>

Plaintiffs' motion requests attorney's fees in the amount of $312,911.53. (ECF No. 175 at 1). This number is predicated on 996.89 hours of work after a purported write off of 153.91 hours. *Id.* at Ex. 2. Plaintiffs' motion requests the following:

    (a)    Written discovery: 88.12 hours, including a twenty-percent reduction to account for any additional overlap between compensable and non-compensable work. Plaintiffs aver written discovery "was essential to revealing the nature of Defendants' relationship and establishing Commercial as Plaintiffs' joint employer." *Id.* at 14.

5

(b) Depositions: 108.01 hours, including a thirty-percent reduction and excluding duplicated work of a second attorney. Plaintiffs made this discount "in recognition of the fact that a portion of deposition time was also spent inquiring into Plaintiffs' pre- and post-shift work claims, which were ultimately not successful." *Id.* at 15.

(c) Motions practice: 352.49 hours, including a ten percent reduction "in an exercise of up-front billing discretion," and excluding "time spent on motions for which Plaintiffs were unsuccessful" and "time that was either redundant or unrelated to Plaintiffs' success against Commercial." *Id.* at 16.

(d) Hearings: 28.15 hours for preparation for and/or attendance at three hearings, excluding a hearing regarding withdrawal of J.I.'s counsel and second attorney time for one hearing. *See id.*

(e) Fee petition preparation: 127.25 hours spent preparing the instant motion, including ten hours set aside for a reply. *See id.* at 17.

(f) Appeal: 270.84 hours spent on appeal, including a twenty-percent reduction and excluding 77.35 hours in "up-front billing discretion." *Id.* at 17–18.[4]

In support of the motion, Plaintiffs submitted a record of hours billed by each attorney for specific tasks, four declarations, two affidavits, and four additional documents relating to the appeal. (*See* ECF No. 175-1) ("Index of Exhibits"). According to Plaintiffs, they "narrowly tailored" the fee request "to exclude any amounts for those aspects of the litigation as to which they were unsuccessful." (ECF No. 175 at 13).

---

[4] Plaintiffs excluded hours worked in the following phases of litigation: (1) case development, investigation, and administration; (2) pleadings; (3) trial preparation and post-trial motions; (4) trial; and (5) alternative dispute resolution. *Id.* at 13–17.

In addition, Plaintiffs also represent that they excluded any duplicative billing consistent with Appendix B of this Court's Local Rules, as well as any bills for work covered by the previous fee award (ECF No. 121). *See id.*

Plaintiffs contend that they set forth attorney and paralegal rates that are within the range prescribed by the Court's Local Rules and supported these rates with attorney declarations. *See id.* at 18–19, Exs. 2–7; L.R. Appendix B. Furthermore, Plaintiffs conducted their own analysis of the requested rates and hours pursuant to the *Johnson* factors, asserting that Plaintiffs' requested amount of attorney's fees is reasonable. (ECF No. 175 at 19–27).

Finally, Plaintiffs aver, in part, that the *Randolph* "step two is already subsumed within Plaintiffs' lodestar calculation," and that further downward adjustment is not warranted in *Randolph's* step three. *Id.* at 28–29.

C. Commercial's Opposition

In its Opposition to Plaintiffs' Motion for Attorney's Fees (ECF No. 178), Commercial asserts that Plaintiffs' degree of success is minimal, and thereby maintains that their attorney's fees request is disproportionate to the damages Plaintiffs recovered. Commercial specifically contends: (1) Plaintiffs did not prevail on the class and collective certification actions; (2) Plaintiffs did not prevail on two out of three of their claims in the Second Amended Complaint (the pre- and post- shift claims); (3) because Plaintiffs only recovered a small amount relative to the amount in controversy, the number of attorney work hours is unjustified; (4) too many attorneys and paralegals worked on Plaintiffs' case (ten and three, respectively); (5) Plaintiffs recovered only a fraction of the amount allegedly in controversy (Plaintiffs "recovered from Commercial less than one half of one percent of the amounts they claimed on behalf of these plaintiffs;" "recovered from Commercial less than one ten thousandth of the amount allegedly in

controversy when they filed this action, as a class and collective action;" and collected only eight percent of the amount claimed for the five plaintiffs); and (6) attorney's fees at 300 times the amount of recovery is unreasonable because it is disproportionate. (ECF No. 178 at 7–9).

In addition, Commercial claims that although the Fourth Circuit's decision "was displeasing to Commercial, it is hardly the earth shaking decision plaintiffs claim." *Id.* at 9. Next, Commercial avers that "success" means economic benefit to the Plaintiffs. *Id.* at 9.

Commercial advances these arguments as it performs its own analysis of the *Johnson* factors, as explained more fully below. *Id.* at 10–17. It is worth noting that in its Opposition, Commercial fails to mention steps two or three of the *Randolph* process. Nor does Commercial mention a dollar amount or a percentage by which this Court should reduce Plaintiffs' attorney's fees. *Id.*

### D. Plaintiffs' Reply to Commercial's Opposition

Plaintiffs filed a reply brief, maintaining that: (1) they seek fees only for issues on which they attained total success; (2) proportionality arguments like Commercial's have been squarely rejected; (3) they recovered for compensable injuries that distinguish their case from nominal awards recovered in civil rights cases; (4) even plaintiffs who recover a relatively modest statutory amount are entitled to reasonable attorney's fees; and (5) the *Johnson* factors support the full award of the attorney's fees requested. (ECF No. 179).

## III. Analysis and Findings

### A. Motion for Attorney's Fees

#### 1. Plaintiffs are a Prevailing Party

As an initial matter, I find that Plaintiffs are indisputably a prevailing party under the meaning of the FLSA. *Hensley*, a leading Supreme Court case on the prevailing party issue, is

instructive. In dicta, the *Hensley* Court opines that there are cases where "the plaintiff's claims for relief will involve a common core of facts." *Hensley*, 461 U.S. at 435. In such cases, counsel's time will be "devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." Thus, in awarding attorney's fees, the district court should focus on "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.*

I now address Commercial's first, second, and fifth arguments as summarized previously (*see supra*, Part II.C.), which in essence amounts to an assertion that Plaintiffs are not a prevailing party.

First, I find that Commercial's contention that Plaintiffs were unsuccessful on the class and collective action claims misses the mark. Similarly, Commercial's focus on the unsuccessful claims against both J.I. and Commercial are also misplaced for this attorney fee petition. The prior fee award received by Plaintiffs related to these unsuccessful claims (*see generally* ECF No. 121), whereas this fee petition relates to the success of Plaintiffs' claim against Commercial subsequent to a change in the joint employer law.[5]

Here, I find that Plaintiffs seek attorney's fees solely for the joint employer issue, which was ultimately taken up on appeal. On appeal, judgment in favor of Commercial was reversed, and, on remand, this issue was decided in favor of Plaintiffs. It was after this successful appeal that Plaintiffs sought the maximum amount allowable under the statute, $1,041.00, which was so

---

[5] In Commercial's Opposition, Commercial even concedes that the previous fee award addressed these unsuccessful claims. *See* ECF No. 178 at 16–17 (noting that Judge Motz "determined that plaintiffs were not entitled to bring this action as a class action nor as a collective action . . . [and] that more than 99% of the monetary claims brought on behalf of these plaintiffs against both defendants were not valid" before he "considered plaintiffs' fee petition" and made the previous fee award).

9

awarded. (*See* ECF Nos. 157, 168). In sum, as to this single issue—the only issue to which the instant fee petition applies—Plaintiffs were successful and are the prevailing party.

2. *Johnson* Factors Analysis

I also find that the twelve *Johnson* factors weigh in favor of finding that Plaintiffs' attorney's fees are reasonable. Commercial does not actually dispute the following factors: (1) the skill requisite to perform the legal service properly; (2) the preclusion of employment by the attorney due to acceptance of the case; (3) the customary fee; (4) whether the fee is fixed or contingent; (5) time limitations imposed by the client or the circumstances; (6) the experience, reputation, and ability of the attorneys; or (7) the nature or length of the professional relationship with the client. (*See* ECF No. 178 at 10–15). I have reviewed the Index of Exhibits and pleadings, and find that Plaintiffs have complied with the Local Rules and the relevant law analyzing these factors.

As to the remaining factors, I will address each in turn.

a. Time and labor required

Commercial objects to the amount of time and labor expended; in particular, Commercial notes that ten attorneys and three paralegals devoted time to this case. *Id.* at 10. A review of Plaintiffs' submission reveals this assertion as true; however, I find that many of these attorneys worked only a limited number of hours on the case as support for the main attorneys. This staffing arrangement is not unreasonable. The time and labor expended demonstrates an overall efficiency over six years of litigation.

Next, Commercial contends that Plaintiffs improperly include billing entries for discovery that "relate wholly or in part to JI and issues involving JI" in their motion for attorney's fees. Plaintiffs aver that J.I.-focused discovery was properly included as essential to

proving Commercial's joint employer status. *Id.* at 11. This factual scenario is analogous to *Andrade v. Aerotek*, 852 F. Supp. 2d 637, 643 (D. Md. 2012), where Aerotek disputed billing entries relating to "interrogatories, document production, depositions, deposition preparation, or other discovery-related work" that was the basis for all of plaintiffs' claims, both successful and unsuccessful. In that case, the Honorable Catherine C. Blake held that it did not matter that the information obtained in discovery was used for both successful and unsuccessful claims. There, Judge Blake awarded fees in part because the plaintiffs "directly relied on information obtained during discovery to make their successful . . . claim." *Id.* I find that the discovery in the instant case was necessary to establish any joint employer relationship between J.I. and Commercial. Although discovery necessarily focused on issues beyond the joint employer issue, I find that Plaintiffs' additional reduction of twenty percent for these billing entries accounts for any potential overlap among issues. *Compare Rum Creek*, at 175.

        b.        Novelty and difficulty of the questions

Contrary to Commercial's assertions, I next find that the decision on appeal was an important one, as the Fourth Circuit established a new test for determining whether a joint employer relationship exists. *See Salinas v.* Commercial *Interiors, Inc.*, 848 F.3d 125, 140–41 (4th Cir. 2017) ("But unlike many of our Sister Circuits, we have not identified specific factors courts should consider in determining whether a joint employment relationship exists . . . In light of this confusion . . . we now set forth our own test for determining whether two persons or entities constitute joint employers for purposes of the FLSA."). This factor thus weighs in favor of Plaintiffs' fee award.

### c. Amount involved and the results obtained

Plaintiffs claim that the amount in controversy is $1,041.00, i.e., the amount sought after remand after the Fourth Circuit appeal. Commercial incorrectly asserts that the amount in controversy is from "[e]arlier in the litigation" or "at plaintiffs' initial filing" ($352,956.40 and two million to 3.2 million dollars, respectively). ECF No. 178. I find that the amount sought after remand is the amount in controversy. *See* Part III.A.1, *supra*. In light of this finding, I further find that Plaintiffs obtained excellent results with a $1,041.00 recovery on the total $1,041.00 sought.

Commercial's proportionality argument, *see* Part II.C.(5)–(6), is that Plaintiffs only recovered a fraction of the amount allegedly in controversy. This proportionality argument must also fail because in FLSA cases, attorney's fees awards are frequently disproportionate to the amount recovered. *See Jones v. Southpeak Interactive Corp. of Del.*, 777 F.3d 658, 676 (4th Cir. 2015) ("A court may consider whether a fee award seems reasonable in light of the amount of damages awarded. However, 'a substantial disproportionality between a fee award and a verdict, standing alone, may not justify a reduction in attorney's fees.'") (quoting *McAfee*, 738 F.3d at 94); *see also Reyes v. Clime*, No. PWG-14-1908, 2015 WL 3644639, at *4 (D. Md. June 8, 2015) (noting that disproportionality is common in FLSA actions, "where vulnerable plaintiffs may be vindicating important rights that entitle them to relatively modest compensation."); *see also Nelson*, *supra*, at *2.

As stated above, because of Plaintiffs' remarkable appellate success, this factor weighs in favor of Plaintiffs' award.

d. "Undesirability" of the case

Commercial disagrees with Plaintiffs that FLSA cases with a joint employer issue are less desirable, but offers no evidence to rebut Plaintiffs' declarations stating otherwise. I find that Plaintiffs have met their burden, and that prior to *Jacobson v. Comcast Corp.*, 740 F. Supp. 2d 683 (D. Md. 2010), lawyers were reluctant to accept such FLSA cases. Accordingly, this factor weighs in favor of Plaintiffs.

e. Awards in similar cases

Similarly, to counter Plaintiffs' motion, Commercial cites to multiple examples of fee awards in FLSA cases, purportedly arguing that none of these cases are similar to this case where the amount of attorney's fees sought is three hundred times the amount recovered by Plaintiffs. (ECF No. 178 at 16). Plaintiffs cite to cases where attorneys have received fees significantly larger than what Plaintiffs recovered. (*See* ECF No. 175 at 27–28) (citing, e.g., *Andrade*, *supra*, for its $110,115.94 award on a $13,940.08). None of the cases cited involve plaintiffs who achieve success on appeal and cause a change in the standard for determining whether two employers have a joint employer relationship. I find that the cases Plaintiffs cite, in combination with their success on appeal, support a finding that the fees sought are reasonable.

3. *Randolph:* Step Two and Three Analysis

I have reviewed all of the billing records listed in Part II.B. I find that they reflect work pertaining to the joint employer issue, or that Plaintiffs have otherwise appropriately reduced hours to account for any potential overlap on related issues with a common core of facts except for as set forth below. *See Hensley*, 461 U.S. at 435 ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.").

Plaintiffs aver that their preemptive discount of $58,059.97 absolves the court from engaging in what I call a step two or step three *Randolph* analysis of the amount of fees requested. *See id.* at 14–18, 28 ("Any further subtraction at step two would thus be unwarranted."). I find that the Court should make some modifications.

For the reasons explained below, I will further adjust certain entries on the submitted billing records:

| Billing Record Number | Original Amount | Adjusted Amount |
|---|---|---|
| 275 | $592.00 | $0.00 |
| 306 | $1425.00 | $1187.00 |
| 311 | $1698.00 | $1244.00 |
| 394 | $840.00 | $0.00 |
| 412 | $3,357.50 | $197.50 |
| 413 | $175.00 | $0.00 |
| 414 | $1650.00 | $1500.00 |
| 502 | $75.00 | $0.00 |
| 555 | $525.00 | $262.50 |
| 559 | $150.00 | $0.00 |
| 560 | $37.50 | $0.00 |

Entry 275 has no description, and seems duplicative of 276. It has been stricken.

(a) Entries 306 and 311 exceed the allowable maximum travel time to be compensated at the full attorney's rate. I have recalculated the total to reflect two hours at the full rate and the excess charged at half of the attorney's rate. *See* L.R. Appendix B (explaining compensable travel times).

(b) Entry 394 has an insufficient description and has been stricken.

(c) Entries 412, 413, and 414 seem to all refer to the same intra-office conference call, which lasted 0.5 hours. Entry 412 erroneously bills 8.5 hours. I adjusted 412 to reflect the proper amount of time by deducting 8 hours. To avoid charging three attorneys' time for the conference call billed to the most senior attorney in entry

14

412, I subtracted 0.5 hours from entry 414 and struck entry 313 in its entirety. *See id.*

(d) Entry 502 and 559 reflect a more junior attorney or paralegal charging for the same intra-office conference call. They have been stricken entirely.

(e) Entry 555 is partially duplicative of an attorney's charge for an intra-office conference call in 556. The duplicative time has been stricken.

(f) Entry 560 is duplicative of 561 and has been stricken in its entirety.

(g) In total, I make a downward adjustment of $6,134.00 based on my own review of the records.

In sum, I find that the requested fees are reasonable and that no further downward adjustments are necessary. I have multiplied the number of reasonable hours expended by the reasonable rates for each attorney as instructed by *Randolph*, and followed the other *Randolph* requirements. I ultimately recommend a total attorney's fees award of $306,777.53.

B. Bill of Costs

Plaintiffs submitted a bill of costs totaling $9,485.95: $1,062.00 from the Fourth Circuit mandate (relating to the opening brief, joint appendix, and reply brief) and the remaining $8,423.95 in deposition transcript costs. (*See* ECF No. 171; ECF No. 130). I find that Plaintiffs' bill of costs is supported by an accompanying affidavit from Ryan E. Griffin, Esq. and the appropriate invoices. (*See* ECF No. 171; L.R. 109.1(b)). Commercial filed an opposition to the bill of costs, making three arguments: (1) the costs related to the mandate were untimely; (2) Plaintiffs are not entitled to deposition transcript costs for depositions appended as exhibits to motions that they lost; and (3) Plaintiffs are not a "prevailing party" under Fed. R. Civ. P. 54. *See* ECF No. 173 at 2. These arguments lack merit.

First, as mentioned in Part III.A.1, *supra*, Plaintiffs are clearly the prevailing party under Fed. R. Civ. P. 54.

Next, with regard to Commercial's second argument, I find that Plaintiffs not only relied on these deposition transcripts for their unsuccessful motions, but also for their successful motions against Commercial related to the joint employer issue. (*See* ECF No. 171-2 at 1, Ex. 1). I find that Plaintiffs' use of the same transcripts as exhibits to a losing motion is irrelevant, as they relied on them for the joint employer issue. I therefore find the $8,423.95 in deposition transcript costs appropriate.

Finally, the amount on the bill of costs related to the mandate was timely filed ($1,062.00). Local Rule 109.1(a) has two parts. First, the rule provides that "a bill of costs shall be filed within fourteen (14) days of the entry of judgment, or of the entry of an order denying a motion, filed under Fed. R. Civ. P. 50(b), 52(b), or 59." L.R. 109.1(a). The rule then says that "[a] bill of costs incurred on appeal taxable in this Court should be filed within fourteen (14) days of the issuance of the mandate by the Court of Appeals or, in the event of review by the Supreme Court, within fourteen (14) days of the entry of judgment by the Supreme Court." *Id.* In this case, the judgment was entered on November 13, 2017, and the bill of costs was filed on November 28, 2017. Thanksgiving was on November 23, 2017. The costs at issue are taxable to the appellee, not to this Court. *See id.*; *see also* Fed. R. App. P. 39(a)(3) ("[I]f a judgment is reversed, costs are taxed against the appellee"). Because Plaintiffs filed fourteen days after the entry of judgment, I find that the bill of costs was timely filed.

Accordingly, I find and recommend that Plaintiffs be awarded $9,485.95 in costs.

## IV. Conclusion

In sum, I respectfully recommend that the Court:

1) award Plaintiffs $306,777.53 in attorney's fees; and

2) award Plaintiffs $9,485.95 in costs.


Dated:  June 8, 2018                                         /s/
                                                 The Honorable Gina L. Simms
                                                 United States Magistrate Judge